## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff,** | § | |
| | § | Case No. 1:01-cr-00031-MAC-CLS- |
| **v.** | § | 3 |
| | § | |
| **JOSEPH FRANKLIN SMITH,** | § | |
| **Defendant.** | § | |

## JOSEPH FRANKLIN SMITH'S MOTION FOR SENTENCE
## REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

<u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................. 3

   A.   Smith Experienced Severe Childhood Trauma That Began with His Father's Murder. ..... 3

   B.   This Court Had No Choice but to Sentence Smith to More than 38 Years at the Age of Nineteen. ................................................................................................................. 5

   C.   Smith Is a Model Inmate Whose Exceptional Mental Health Accomplishments and Educational Achievements Demonstrate His Commitment to Change. ................................... 5

       1.   Smith's Volunteer Work as a Step Down Program Mentor ........................................... 6

       2.   Smith's Work History ................................................................................................ 7

       3.   Smith's Education ..................................................................................................... 7

III.   ARGUMENT .................................................................................................... 9

   A.   The History and Developments of 18 U.S.C. § 3582(c)(1)(A) ........................................... 9

   B.   Under § 1B1.13, a Non-Retroactive Change in the Law Can Amount to an Extraordinary and Compelling Reason Warranting a Sentence Reduction ....................................... 10

   C.   Smith's Sentence Should Be Reduced Under § 1B1.13(b)(6) ........................................ 13

   D.   Extraordinary and Compelling Circumstances Warrant a Reduction in Smith's Sentence. 13

   E.   The Combination of Smith's Unusually Long Sentence, Remarkable Rehabilitation, Young Age at the Time of the Offense, and Co-Defendant Sentencing Disparities Present An Additional Extraordinary and Compelling Reason under the Catch-All Provision In § 1B1.13(b)(5) ............................................................................................................. 16

   F.   The Criteria for Reassessing the Length of Smith's Sentence Weigh Strongly in Favor of a Sentence Reduction to Time Served. ............................................................................. 21

       1.   Smith Does Not Pose a Danger. .................................................................................. 22

       2.   Smith's Twenty-Three-Year Sentence Provides Sufficient Deterrence and Punishment, and Further Incarceration Creates Unwarranted Sentencing Disparities. ............................. 23

       3.   Smith has a Robust Release Plan that Would Allow Him to Thrive Once Back in the Community ................................................................................................................. 27

## TABLE OF AUTHORITIES

**Cases**

*Pepper v. United States*,
    562 U.S. 476 (2011)..................................................................................21

*Roper v. Simmons*,
    543 U.S. 551 (2005)..................................................................................17

*States v. Watson*,
    No. 04-CR-182-TCK-02, 2022 WL 1125801 (N.D. Okla. Apr. 15, 2022) ............................18

*Thompson v. Oklahoma*,
    487 U.S. 815 (1988)..................................................................................24

*United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021) ................................................11

*United States v. Baker*,
    No. 10-20513, 2020 WL 4696594 (E.D. Mich. Aug. 13, 2020)............................20

*United States v. Booker*,
    543 U.S. 220 (2005)..........................................................................14, 23, 25

*United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) ................................................11

*United States v. Brown*,
    457 F. Supp. 3d 691 (S.D. Iowa 2020) ................................................20

*United States v. Brown*,
    No. 2:95-CR-66(2), 2024 WL 409062 (S.D. Ohio Feb. 2, 2024)............................18

*United States v. Chen*,
    48 F.4th 1092 (9th Cir. 2022) ................................................11

*United States v. Clausen*,
    No. CR 00-291-2, 2020 WL 4260795 (E.D. Pa. July 24, 2020)............................20

*United States v. Cooper*,
    996 F.3d 283 (5th Cir. 2021) ................................................19

*United States v. Cooper*,
    No. H-09-132-1, 2021 WL 5027498 (S.D. Tex. 2021)....................................24, 25

*United States v. Crandall*,
    25 F.4th 582 (8th Cir. 2022) ................................................11

*United States v. Díaz-Castro*,
   No. 10-333-4, 2022 WL 10986177 (D.P.R. Oct. 19, 2022)....................................................16

*United States v. Eccleston*,
   573 F. Supp. 3d. 1013 (D. Md. 2021) ...................................................................................18

*United States v. Elam*,
   No. 22-40373, 2023 WL 6518115 (5th Cir. Oct. 5, 2023) ....................................................12

*United States v. Fowler*,
   544 F. Supp. 3d 764 (N.D. Tex. 2021) ..................................................................................19

*United States v. Gregory*,
   No. 07-CR-73, 2021 WL 5450692 (N.D. Okla. Nov. 22, 2021) ...........................................16

*United States v. Harper*,
   2024 WL 1053547 (N.D. Ga. Mar. 11, 2024).......................................................................14

*United States v. Hudec*,
   No. 4:91-1-1, 2022 WL 2118974 (S.D. Tex. June 9, 2022) ..................................................19

*United States v. Jean*,
   No. 23-40463, 2024 WL 3409145 (5th Cir. July 15, 2024) .............................................2, 12

*United States v. Jenkins*,
   50 F.4th 1185 (D.C. Cir. 2022)..............................................................................................11

*United States v. Johnson*,
   No. 05-CR-00167-WHA-5, 2021 WL 5037679 (N.D. Cal. Oct. 30, 2021) ..........................20

*United States v. Lang*,
   No. CR 04-11, 2023 WL 6065156 (E.D. La. Sept. 18, 2023) ....................................12, 25, 26

*United States v. Mapp*,
   467 F. Supp. 3d 63 (E.D.N.Y., 2020) ...................................................................................20

*United States v. McCall*,
   56 F.4th 1048 (6th Cir. 2022) ...............................................................................................11

*United States v. McCoy*,
   981 F.3d 271 (4th Cir. 2020) ....................................................................................11, 20, 25

*United States v. McGee*,
   992 F.3d 1035 (10th Cir. 2021) .............................................................................................11

*United States v. McMaryion*,
   No. 21-50450, 2023 WL 4118015 (5th Cir. June 22, 2023)..................................................12

*United States v. Mitsuyoshi,*
   No. 11-cr-00380, 2022 WL 819436 (D. Haw. Mar. 17, 2022)..............................................20

*United States v. Owens,*
   996 F.3d 755 (6th Cir. 2021) ............................................................................................20

*United States v. Payne,*
   No. 94-CR-150-TCK, 2022 WL 2257044 (N.D. Okla. June 23, 2022)...............................18

*United States v. Perez,*
   No. 88-10094-1-JTM, 2020 WL 1180719 (D. Kan. Mar. 11, 2020)....................................20

*United States v. Perkins,*
   No. 3:97-cv-00055-K-21, 2023 WL 158910 (N.D. Tex. Jan. 11, 2023) ..........................19, 27

*United States v. Rainwater,*
   3:94-CR-042-D(1), 2021 WL 1610153 (N.D. Tex. Apr. 26, 2021) ....................................25

*United States v. Redd,*
   444 F. Supp. 3d 717 (E.D. Va. 2020) ................................................................................20

*United States v. Redmond,*
   No. 3:03-CR-377-K-1, 2023 WL 1110312 (N.D. Tex. Jan. 30, 2023)..................................14

*United States v. Reedy,*
   678 F. Supp. 3d 859 (N.D. Tex. 2024) ..............................................................................14

*United States v. Richardson,*
   No. 2:06-cr-00010, 2021 WL 5043362 (W.D.N.C. Oct. 28, 2021).....................................17

*United States v. Riley,*
   No. CR 11-235, 2023 WL 8600496 (E.D. La. Dec. 12, 2023) .......................................14, 26

*United States v. Ruvalcaba,*
   26 F.4th 14 (1st Cir. 2022)................................................................................................11

*United States v. Smith,*
   No. 4:99-cr-66-RH-MAF, 2024 WL 885045 (N.D. Fla. Feb. 20, 2024) ...............................14

*United States v. Spicer,*
   No. 3:00CR141TSL-FKB-1, 2022 WL 16643098 (S.D. Miss. 2022)..............................26, 27

*United States v. Thacker,*
   4 F.4th 569 (7th Cir. 2021) ..............................................................................................11

*United States v. Tolliver,*
   529 F.Supp.3d 619 (N.D. Tex. 2021) ................................................................................22

*United States v. Vaughn,*
    62 F.4th 1071 (7th Cir. 2023) ...........................................................16

*United States v. Williams,*
    No. 4-21-CR-0035-P-1, 2022 WL 1189996 (N.D. Tex. Apr. 21, 2022) ...................................9


**Statutes**

18 U.S.C. § 924(c) ............................................................... *passim*

18 U.S.C. § 371 ...........................................................................5

18 U.S.C. § 1951 .........................................................................5

18 U.S.C. § 3553(a) ........................................................... *passim*

18 U.S.C. § 3582(c)(1)(A) ................................................... *passim*

28 U.S.C. § 994(t) ......................................................................9

U.S.S.G. § 1B1.13 .............................................................. *passim*

U.S.S.G. § 5H1.1 .....................................................................16

**Other Authorities**

Alexander Weigard et al., *Effects of Anonymous Peer Observation on*
    *Adolescents' Preference for Immediate Rewards,* 17 Developmental Sci. 71
    (2014) ..............................................................................17

Andrew Michaels, *A Decent Proposal: Exempting Eighteen-to-Twenty-Year-Olds*
    *From the Death Penalty*, 40 N.Y.U. Rev. L. & Soc. Change 139, 163 (2016) .....................17

Jeffrey Jensen Arnett, *Identity Development from Adolescence to Emerging*
    *Adulthood: What We Know and (Especially) Don't Know*, THE OXFORD
    HANDBOOK OF IDENTITY DEVELOPMENT 53 ....................................................17

Kathryn L. Mills et al., *The Developmental Mismatch in Structural Brain*
    *Maturation During Adolescence,* 36 Developmental Neuroscience 147 (2014) ...................17

Kathryn Monahan et al., *Juvenile Justice Policy and Practice: A Developmental*
    *Perspective,* 44 Crime & Just. 577 (2015). ..................................................17

Laurence Steinberg et al., *Age Differences in Future Orientation and Delay*
    *Discounting*, 80 Child Dev. 28 (2009) ......................................................19

U.S. Sent'g Comm'n, Statistical Information Packet Fiscal Year 2022, Fifth Circuit 11 (2023) ...................................................................................................................13, 25

U.S. Sent'g Comm'n, *2024 Amendments to the Federal Sentencing Guidelines*...................……16

## I.      INTRODUCTION

At twenty years old in 2002, despite knowing that he would spend his next thirty-eight years in prison, Joseph F. Smith refused to be defined by his conviction and sentence.  Today, over two decades later, Smith is a highly regarded Step Down Program mentor and legal scholar at FMC Fort Worth, where he has earned the respect of both BOP Staff and fellow inmates.  Smith has spent the last two decades dedicated to understanding his mental illness and himself, triumphing through intense mental health and drug treatment, and teaching himself to read.  Smith entered jail as an illiterate nineteen-year-old, still trying to process the brutal murder of his father.  Today, he is a completely different man—no longer the immature teenager he was in 2001 at the time of his offenses.  Over the past twenty-three years, Smith has shown his commitment to educating himself, evidenced by his completion of a paralegal certification with distinction and participation in over 415 hours of educational programming.  Ex. 1, Affidavit of Stephanie Forrest, ¶ 18.

Smith cares for others as well as himself.  He became the first ever mentor in the mental health Step Down Program at FMC Fort Worth.  Ex. 2, Dr. Rebecca Cartagena, Behavioral Observation (March 19, 2024) at 1 ("He has served his role as mentor well.  He fulfills all aspects of his job duties, has a strong work ethic, and shows a high level of discipline.  He has been nothing but consistent.").  He demonstrates that rehabilitation is possible.

In 2002, Smith was sentenced to 38 years and five months incarceration for his role in the robbery of a fast-food establishment, with 35 years coming from two 18 U.S.C. § 924(c) counts.  At the time, this sentence was mandatory because of the way multiple § 924(c) charges were required to be sentenced.  However, in 2018, Congress clarified § 924(c) in the First Step Act, limiting the onerous enhanced mandatory consecutive sentences for "second or successive" § 924(c) counts to

1

situations where a prior § 924(c) conviction has become final.  If sentenced today, Smith's mandatory time would be cut in half.

As many courts have found, Smith's circumstances are extraordinary and compelling, qualifying him for a sentence reduction under multiple subsections of the policy statement adopted by the United States Sentencing Commission ("Commission").  The amended policy statement, which became effective on November 1, 2023, now permits district courts to reduce an unusually long sentence when the defendant has served at least 10 years and an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.  *See United States v. Jean*, No. 23-40463, 2024 WL 3409145, at *11 (5th Cir. July 15, 2024) ("[A]fter November 1, 2023, a non-retroactive change in the law may be considered in determining whether a defendant presents, as a whole, extraordinary and compelling reasons" if the elements of § 1B1.13(b)(6) are met); U.S.S.G. § 1B1.13(b)(6).  That describes Smith perfectly:  Smith has already served 23 years of his sentence, and there is a gross disparity between Smith's 2002 sentence and the sentence he would receive today.

There is an additional extraordinary and compelling reason that justifies the sentence reduction we request here.  Smith presents a "combination of circumstances"—his young age at the time of the offense, the disparity between his sentence and those of his co-defendants, and his remarkable rehabilitation—that warrants a reduction under subsection (b)(5) of the policy statement as well.

Moreover, the 18 U.S.C. § 3553(a) factors weigh heavily in favor of Smith's release.  Smith "has had an overall remarkable adjustment to incarceration and is not indicative of a person who is dangerous or threatening to his community."  Ex. 1, Affidavit of Stephanie Forrest ¶ 34.  Smith has taken ownership and responsibility for his mental health, and "his diagnosis of schizophrenia has also been placed in remission due to his consistent adherence to his medication regimen along with

2

his active participation in the recovery process." Ex. 2, Dr. Rebecca Cartagena, Behavioral Observation (March 19, 2024) at 1.  There will be opportunities for medication management and therapy to continue post-release.  *See* Ex. 3, Letter from Brent Lawless, The Harris Center.  And Smith, who has obtained a paralegal degree with distinction, will be seeking employment as a paralegal after he is released.  Ex. 4, Letter from Joseph Smith at 2.  Smith would not be a danger to the community if released, and the twenty-three years he has already served in prison is sufficient punishment for his offense.  Smith has changed, and his sentence should be reduced to reflect that change.

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.  Smith Experienced Severe Childhood Trauma That Began with His Father's Murder.

Smith spent the first eight years of his life with loving parents, Joseph Sr. and Dorothy, and his three older sisters.  PSR at 10 ¶ 41.  Joseph Sr. drove trucks at a local lumberyard and was the breadwinner of the family.  Ex. 5, Letter of Support from Dorothy Smith at 1.  Dorothy Smith never finished school and worked minimum-wage jobs.  *Id*.  Due to the Smith family's financial challenges, they packed into a small single-story home in east Houston.  PSR at 10 ¶ 41.

Smith had a loving and close relationship with his father, his namesake and his "best friend." Ex. 4, Letter from Joseph Smith at 1.  He spent countless hours with his father practicing on the family's speed-boxing bag and fishing on their small family tugboat.  *Id.*  However, in 1991, at the age of nine years old, Smith's world crumbled after Norman Rex Ward brutally murdered his father. Ex. 6, *Man Held in Shooting*, HOUSTON CHRONICLE, Feb. 8, 1991.  Two men got into an argument with Joseph Sr. during his lunchbreak from work.  *Id*.  Joseph Sr. drove away from the argument, but one of the men took a shotgun from his car and shot Joseph Sr. in the head.  *Id.*

After his father's death, Smith had significant difficulty in processing his trauma.  PSR at 10 ¶ 41.  His mother Dorothy explained that her son was "traumatized by his father's death," and that Smith "kept his emotions 'bottled up'" since his father's death."  *Id.*

After Joseph Sr.'s murder, Smith's world did not wait for him to heal, and his family lost its main source of income.  *Id.*  Smith's mother worked at the local Roman Catholic Church and as a crossing guard.  *Id.*  She also was able to rely on state assistance and support from the lumber yard to help provide for her children.  *Id.*

Without his father's guidance, Smith struggled in school.  He could not read, but he kept that secret to himself.  Ex. 4, Letter from Joseph Smith at 1.  Smith could not address his significant learning disabilities.  Ex. 5, Letter of Support from Dorothy Smith at 1.  When asked to read by his teachers, Smith could not read passages aloud to the class, which embarrassed him, Ex. 4, Letter from Joseph Smith at 1.  He struggled in school, got caught up in the juvenile justice system, and ended up in a military boot camp called Delta 3.  Judgment/Order, State of Texas v. Joseph Franklin Smith, Jr., No. 97-06691J (1998).[1]

Despite his severe learning disability, school officials passed him from grade to grade because of his performance on the football field.  Ex. 4, Letter from Joseph Smith at 1.  Smith eventually graduated high school with a 2.39 grade point average,  and was able to attend college at Texas Southern with a hope to walk-on to its football team.  PSR at 11 ¶ 46.  Unable to comprehend the school subjects, Smith eventually withdrew after his freshman year.  *Id.*

---

[1]      Given the confidential nature of this record, counsel for Mr. Smith have not filed this record on the docket. However, should the Court like to review the record, counsel will file this record under seal.

**B.**     **This Court Had No Choice but to Sentence Smith to More than 38 Years at the Age of Nineteen.**

At nineteen years old, Smith participated in an armed robbery and carjacking at Jenny's Fried Chicken in Kirbyville, Texas along with two older men, Korey Jackson and Derrick Wright. *See* Smith Sent'g Tr. at 6:15-17, ECF 160 (Jul. 14, 2004) ("[t]here were three people who were defendants in this case. [Joseph] is the youngest of the three."). As the Government pointed out, "Jackson was the one who really masterminded this entire thing." Jackson Sent'g Tr. at 27:18–19, ECF 158 (Mar. 22, 2004). After trial, Smith was convicted of one count of conspiracy to commit robbery, in violation of 18 U.S.C. § 1951 and 371; one count of robbery, in violation of U.S.C. § 1951; and one count of using of a firearm to commit robbery, in violation of 18 U.S.C. § 924(c)(1). After Smith was convicted of three counts at trial, he took a plea to count 5, a separate § 924(c) count. In April of 2002, Smith was sentenced to 461 months incarceration, with 120 months coming from the first § 924(c) count and 300 months coming from the second § 924(c) count.

Smith has now served over twenty-three years of his sentence. If sentenced today, Smith would have received, at most, only 17 years for the two § 924(c) offenses, rather than 35 years. There is a gross sentencing disparity between the sentence imposed in 2002 and the one that would be likely imposed today, after the First Step Act. Smith's co-defendants, on the other hand, went home years ago: Korey Jackson was sentenced to 13 years, Jackson Sent'g Tr. at 28:18–23, ECF 158 (Mar. 22, 2004); and Derrick Wright was sentenced to three years. *Id.* at 3:14–16.

**C.**     **Smith Is a Model Inmate Whose Exceptional Mental Health Accomplishments and Educational Achievements Demonstrate His Commitment to Change.**

Smith has dedicated the past 23 years to understanding himself and his mental health. Over time, he has gained the respect of BOP staff through his mental health recovery and through his completion of over 415 hours of educational programming. Smith's remarkable progress is

5

confirmed by BOP Expert Stephanie Forrest's review of Smith's BOP records.  Forrest worked for

the BOP for over two decades as a Correctional Treatment Specialist at FCI Edgefield, where she

was responsible, among other things, for determining eligibility for early release and preparing

inmates for re-entry.  Ex. 1, Affidavit of Stephanie Forrest ¶¶ 1–2.

Based on her review of Smith's records, "[i]n [her] professional opinion . . . Mr. Smith has

had an overall remarkable adjustment to incarceration."  Ex. 1, Affidavit of Stephanie Forrest ¶ 6.

Forrest further contextualizes Smith's incarceration by noting that "[h]is time in prison has been

spent in an environment that is dangerous, unfriendly, impersonal, and isolating.  He has been able

to establish positive relationships with inmates and staff as well as continue to maintain

relationships with his community and family members."  *Id.* at ¶ 7.

### 1.   Smith's Volunteer Work as a Step Down Program Mentor

Smith is a leader at FMC Fort Worth, where he plays an integral role in holding his peers

accountable through his role as a Step Down Mentor.  The Mental Health Step Down Program is a

specialized program offered at FMC Fort Worth that "operates as a modified therapeutic

community (MTC) using cognitive behavioral treatment, peer support, and skills training while

ensuring participants received appropriate medication and have the opportunity to build a positive

relationship with the psychiatrist."  *Id.* at ¶ 25.  The program itself is a "500-hour, unit-based

program."  *Id.*

Smith not only completed the intensive program, but as a testament to his remarkable mental

health progress, he was selected as a mentor unanimously by both his peers and treatment team at

FMC Fort Worth.  Ex. 2, Dr. Rebecca Cartagena, Behavioral Observation (March 19, 2024).  As a

mentor, Smith is a role model to fellow inmates, using the skills that he has gained through the Step

Down Program to resolve problems faced by program participants.  *Id.*  Dr. Cartagena describes

Smith's role as follows:

> [Smith] holds others accountable and provides guidance to those willing to seek help.
> The treatment team has been able to consistently rely upon him to lead through
> example.  He exhibits a high level of integrity.  He has served his role as mentor well.
> He fulfills all aspects of his job duties, has a strong work ethic, and shows a high level
> of discipline.  He has been nothing but consistent.

*Id.*  Dr. Cartagena does not hold back in her praise of Smith, writing that he "has been one of the

few adults in custody that I have observed make a full transformation over the course of his

incarceration."  *Id.*  BOP Expert Forrest expresses that "[i]n [her] decades of BOP experience, it is

very rare for a BOP staff member to give a reference or such a glowing report for any inmate."  Ex.

1, Affidavit of Stephanie Forrest ¶ 27.

####   2.   Smith's Work History

Smith has worked a variety of jobs in prison, including working in UNICOR from 2002

to 2004 and as a Recreation Orderly.  As described above, Smith is currently working as a

mentor in the Step Down Program.

####   3.   Smith's Education

Smith taught himself to read in prison, another testament to his dedication to improving

himself.  Ex. 4, Letter from Joseph Smith at 1.  He has not taken this newfound ability for granted.

Since his incarceration in 2002, Smith has completed over 415 hours of education programming and

has taken over 40 educational classes.  Ex. 1, Affidavit of Stephanie Forrest ¶ 18.  Such an

achievement at such a late age is impressive, but learning how to read in the prison environment is

monumental.  As BOP Expert Forrest states:  "To participate in programs and education, inmates

must overcome the negative influences of those around them, including inmates who are not

motivated to change.  They must also find some means to motivate themselves for self-

improvement, especially people with lengthy sentences like Mr. Smith." *Id*.  This education

includes classes in effective communication skills, money management, criminal procedure, and

legal research, to name a few.  Ex. 7, BOP Inmate Education Data at 1.

Smith learned a significant amount about his mental health through serving as a Step Down

Program participant and mentor, and also took several other specialized programs tailored to mental

health recovery.  For example, Smith completed the House of Healing Program which is a

"powerful 13-session social emotional learning curriculum created specifically to address prisoner

rehabilitation."  Ex. 1, Affidavit of Stephanie Forrest ¶ 22.  The program provides a path to

behavioral change, dignity, and respect for oneself and for others.  It also addresses anger,

resentment, unhealthy guilt, and shame.  *Id.*  Smith also completed a combined 133 sessions in

courses like "Cognitive Skills/Thinking Errors," "Mindfulness and Coping Skills," and "Accepting

Responsibility in a Finger Pointing World."  *Id*. at 23.  As a result of Smith's dedication to

understanding his mental health and himself, he has not received an incident report since February

of 2016.  *Id.* at ¶ 14.  BOP Expert Forrest describes the prison environment as a "very dangerous

place," but even more so for those with a mental health diagnosis.  *Id*. at ¶ 15.  She describes that

"Mr. Smith's behavior alone indicates the ability to maintain the rules and polices of the institution

and practice pro social behaviors."  *Id*.

Moreover, Smith is now a certified paralegal.  Ex. 9, Joseph Smith Paralegal Diploma; *see

also* Ex. 9, Paralegal Student Tr.  He dedicated over 900 hours over the course of two years, to

achieve this certification graduating with distinction with an average of 95.96%.  Ex. 9, Paralegal

Student Tr.  Since his graduation from the Blackstone Career Institute in 2012, Smith has become a

sought-after legal scholar at the prison.  Ex. 4, Letter from Joseph Smith at 2; Ex. 9, Paralegal

Student Tr.  Smith found a professional calling while incarcerated, and he hopes to become a

paralegal once he is released.  Ex. 4, Letter from Joseph Smith at 2.

### III.    ARGUMENT

#### A.    The History and Developments of 18 U.S.C. § 3582(c)(1)(A).

This Court has the authority to reduce Smith's sentence based on the extraordinary and compelling circumstances presented in his case.  Under 18 U.S.C. § 3582(c)(1)(A)(i), district courts are empowered to reduce a defendant's sentence after consideration of the § 3553(a) factors, where "extraordinary and compelling circumstances warrant such a reduction" and the reduction is consistent with "applicable policy statements."  18 U.S.C. § 3582(c)(1)(A).

Congress specifically delegated authority to the Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction."  28 U.S.C. § 994(t).  Prior to the November 1, 2023 Amendments, there was no applicable policy statement that governed prisoner-filed motions.  *See United States v. Williams*, No. 4-21-CR-0035-P-1, 2022 WL 1189996, at *3 (N.D. Tex. Apr. 21, 2022).  On November 1, 2023, the Commission issued new amendments to its existing policy statement, thereby fulfilling its Congressionally mandated duty to describe what constitutes "extraordinary and compelling reasons" for a sentence reduction.  *See* Ex. 10, Amendments to the Sentencing Guidelines.  The Commission amended § 1B1.13 to make it applicable to both defendant-filed and BOP-filed motions.  The changes to the 18 U.S.C. § 3582(c)(1)(A)(i) landscape, made by both the First Step Act and the amended policy statement, now allow individuals to seek sentence reductions in district court thirty days after submitting a request to the warden of their facility.[2]  18 U.S.C. § 3582(c)(1)(A).  Smith's case presents multiple bases for a sentence reduction set forth in § 1B1.13.

First, the Commission added a provision applicable to certain nonretroactive changes in law.  Specifically, a court may find extraordinary and compelling basis for relief when a defendant has

---

[2]    On April 1, 2024, the Caritas Clemency Clinic emailed FMC Fort Worth's Executive Assistant and Smith's Counselor with a detailed request to file a reduced-sentence motion under 18 U.S.C. § 3582(c)(1)(A).

served more than ten years of an unusually long sentence and such a change in the law has created a

"gross disparity" between the sentence being served and the sentence likely to be imposed today for

the same conduct.  U.S.S.G § 1B1.13(b)(6).

Recognizing the need for district courts to look to reasons other than those specified in

§ 1B1.13(b)(1)–(4), the Commission also promulgated the "catch-all" provision now located in

§ 1B1.13(b)(5).  As a second ground for relief, Smith presents a combination of circumstances that

amount to an independent extraordinary and compelling reason, including his youth at the time of

the offense, his remarkable rehabilitation, and the extreme sentencing disparities between Smith and

his co-defendants and similarly situated defendants.

Due to changes stemming from both the First Step Act and the Commission's amended

policy statement, this Court now has the authority to grant Smith's motion for compassionate

release.

### B.    Under § 1B1.13, a Non-Retroactive Change in the Law Can Amount to an Extraordinary and Compelling Reason Warranting a Sentence Reduction.

The Commission's amendments to § 1B1.13 specifically expanded the universe of what it

considered "extraordinary and compelling" reasons to include certain non-retroactive changes in the

law.  Specifically, when: "(a) the defendant is serving an unusually long sentence; (b) the defendant

has served at least ten years of the sentence; and (c) an intervening change in the law has produced

a gross disparity between the sentence being served and the sentence likely to be imposed at the

time the motion is filed," a court may consider a reduction in a sentence.  *Id.*

Before the amended policy statement took effect on November 1, 2023, a circuit split

emerged on whether a non-retroactive change in the law like the First Step Act's changes to

§ 924(c) could be considered extraordinary and compelling.  In the absence of an applicable policy

10

statement,[3] courts around the country created a temporary common law around whether non-retroactive changes in the law could be considered extraordinary and compelling under § 3582(c)(1)(A) when applied to a prisoner-filed motion.  U.S.S.G. App. C, Amend. 814, Reason for Amendment at 11 (Nov. 1, 2023).[4]

After the circuit split developed, the government successfully opposed petitions for review in the Supreme Court from inmates filing in circuits that did not recognize the change in § 924(c)'s sentencing regime as a reason to reduce sentences under § 3582(c)(1)(A).  The government opposed those petitions on the ground that the Commission, not the Supreme Court, should resolve the split. Citing the statutory mandate to the Commission to provide guidance to judges considering such sentence reduction motions, the government wrote in *Jarvis v. United States*, a petition to review a decision of the Sixth Circuit, that "[n]obody disputes . . . that the Commission has the power—indeed, the statutory duty—to promulgate a policy statement that applies to prisoner-filed motions, or that it could resolve this particular issue."  Br. for the United States in Opp'n to Grant of Cert., *Jarvis v. United States*, No. 21-568, 2021 WL 5864543 (U.S. Dec. 8, 2021), at *17–20.  In other cases as well, the government successfully opposed petitions on the ground that the statutory

---

[3]      The Commission lost its quorum in January 2019 and did not regain it for more than three years.

[4]      The First, Fourth, Ninth, and Tenth Circuits all concluded that non-retroactive changes in the law *could* be considered extraordinary and compelling.  *See United States v. Ruvalcaba*, 26 F.4th 14, 24–26 (1st Cir. 2022) (holding that changes in the law could be considered "extraordinary and compelling" for a sentence-reduction motion); *McCoy*, 981 F.3d 271, 286–88 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021); *see also Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020).  The Third, Sixth, Seventh, Eighth, and the District of Columbia Circuits all concluded that non-retroactive changes *could not* be considered extraordinary and compelling.  *United States v. Andrews*, 12 F.4th 255, 260–61 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1065–66 (6th Cir. 2022), *United States v. Thacker*, 4 F.4th 569, 573–75 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198 (D.C. Cir. 2022).

11

scheme vested the responsibility to resolve the circuit split in the Commission, not the Supreme Court.[5]

On June 22, 2023, prior to the effective date of the amended policy statement, the Fifth Circuit issued an unpublished opinion stating that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary or compelling."  *See United States v. McMaryion*, No. 21-50450, 2023 WL 4118015 at *2 (5th Cir. June 22, 2023).  However, the Fifth Circuit later acknowledged that the Commission's "forthcoming policy statement . . . would apply to sentence reduction motions by *both* the BOP and prisoners themselves."  The Fifth Circuit recognized that "district courts 'may' consider changes in law as part of the "extraordinary and compelling" reasons analysis, but "only" after "full[y] consider[ing] the prisoner's individualized circumstances."  *United States v. Elam*, No. 22-40373, 2023 WL 6518115, at *2 (5th Cir. Oct. 5, 2023) (discussing *McMaryion*); *see also United States v. Lang*, No. CR 04-11, 2023 WL 6065156, at *5 (E.D. La. Sept. 18, 2023) (finding "the amended Guidelines clearly delineate the circumstances under which an unusually long sentence is a consideration 'unique to' a particular defendant such that a district court may consider it as a basis for compassionate release:  where a change in the law would produce a gross disparity in the sentence being served and the sentence likely to be imposed now.").  Most recently, in *United States v. Jean*, the majority of a divided Fifth Circuit panel affirmed a district court's grant of a defendant's pre-amendment motion under 18 U.S.C. § 3582(c)(1)(A)(i) predicated, in part, on non-retroactive changes in sentencing law.  No. 23-40463, 2024 WL 3409145 (5th Cir. July 15, 2024).  In so doing,

---

[5]   *See* Br. for the United States in Opp'n to Grant of Cert., *United States v. Thacker*, No. 21-877, 2022 WL 467984 (U.S. Feb. 14, 2022), at *2 ("the Sentencing Commission could promulgate a new policy statement that deprives a decision by this Court of any practical significance"); Br. for the United States in Opp'n to Grant of Cert., *United States v. Williams*, 21-767, 2022 WL 217947 (U.S. Jan. 24, 2022), at *2 (same); Br. for the United States in Opp'n to Grant of Cert., *United States v. Watford*, 21-551, 2021 WL 5983234 (U.S. Dec. 15, 2021), at *2 (same); Br. for the United States in Opp'n, *Sutton v. United States*, No. 21-6010 (U.S. Dec. 20, 2021), at *2 (same).

the Fifth Circuit addressed the Commission's clear authority to promulgate the policy statement.  *Id.* at *12 ("Congress has charged the Sentencing Commission with periodically reviewing and revising the Guidelines and . . . in charging the Commission with revision responsibility, 'necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest.'") (citing *Braxton v. United States*, 500 U.S. 344, 348 (1991)).

### C.    Smith's Sentence Should Be Reduced Under § 1B1.13(b)(6)

As of today, the situation has changed.  By amending § 1B1.13, the Commission exercised its authority to describe what circumstances constitute "extraordinary and compelling reasons" by issuing its new Amendments.  In doing so, it explained that its decision to resolve the circuit split (as opposed to leaving it to the Supreme Court to resolve) was influenced by DOJ's insistence in the Supreme Court that the Commission was the proper forum.

The Amendments took effect on November 1, 2023, adding a new circumstance the Commission considered to be extraordinary and compelling:  In making its decision, the Commission unequivocally stated that "[t]he amendment agrees with the circuits that authorize a district court to consider nonretroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction."  Ex. 10, Amendments to the Sentencing Guidelines at 6.

### D.    Extraordinary and Compelling Circumstances Warrant a Reduction in Smith's Sentence.

As mentioned above, under § 1B1.13(b)(6),  an extraordinary and compelling reason warranting a sentence reduction exists where:  (1) the defendant has served ten years of his sentence; (2) the sentence is unusually long; and (3) an intervening change in law has created a gross disparity between the sentence currently being served and the sentence likely to be imposed

13

today.  Ex. 10, Amendments to the Sentencing Guidelines at 11 (citing § 1B1.13(b)(6)).  The Commission made clear that the provision "permits a judge to consider non-retroactive changes in sentencing law as an extraordinary and compelling reason" under these circumstances.  *Id.* at 3.  As described below, Smith meets these criteria.

First, Smith has served more than 23 years in prison.

Second, Smith's sentence is unusually long.  In 2002, Smith was sentenced to more than 38 years in prison, with 35 years of mandatory time that would not be required today.  Between 2013 and 2022, "fewer than 12 percent (11.5%) of all offenders were sentenced to a term of imprisonment of ten years or longer."  *See* Ex. 10, Amendments to the Sentencing Guidelines at 12. In 2022, the average sentence imposed nationally for robbery offenders was 106 months.  *See* U.S. Sentencing Comm'n, Statistical Information Packet Fiscal Year 2022, Fifth Circuit 11 (2023), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2022/5c22.pdf.  Indeed, the average national sentence for *murder* was just 261 months.  *Id.*  Smith's sentence is thus unusually long.

Third, an intervening change in law—the First Step Act—produced a "gross disparity" between Smith's current sentence and the sentence he would likely receive today.  Today, the prison time mandated by Smith's § 924(c) counts would be 17 years, not 35 years.  *See* 18 U.S.C. § 924(c)(1)(A)(ii).

In response to the Commission's amended policy statement, district courts around the country and within the Fifth Circuit have granted defendant-filed (b)(6) motions under similar circumstances.  *See e.g.*, *United States v. Riley*, No. CR 11-235, 2023 WL 8600496, at *6–7 (E.D. La. Dec. 12, 2023) (applying 2023 Amendments to defendant's sentence and finding that even though First Step Act did not make sentencing changes retroactive, "the 10-year difference in the sentence Riley received in 2014 and the sentence he would receive today constitutes a "gross

14

disparity" that is worth remedying"); *United States v. Redmond*, No. 3:03-CR-377-K-1, 2023 WL 1110312, at *4  (N.D. Tex. Jan. 30, 2023) (granting reduction and recognizing that "this Court has joined other federal courts to conclude that, although [the § 924(c) changes] [created by] the [First Step Act] [are] not retroactive, such a watershed change in sentencing law may constitute an extraordinary and compelling reason to allow a defendant to pass through § 3582(c)(1)(A)'s first gate"); *United States v. Reedy*, 678 F. Supp. 3d 859, 865–66 (N.D. Tex. 2024) (granting sentence reduction to time served for defendant with life sentence when similarly situated defendants were given downward departures due to *Booker*, *and* because of Congress creating an "explicit avenue for relief" through (b)(6)); *United States v. Harper*, No. 1:04-cr-00218, 2024 WL 1053547, at *6 (N.D. Ga. Mar. 11, 2024) (concluding that (b)(6) is valid and reducing a multi-decade sentence based on stacked § 924(c) convictions to time served); *United States v. Smith*, No. 4:99-cr-66-RH-MAF, 2024 WL 885045, at *5 (N.D. Fla. Feb. 20, 2024) (reducing 92-year sentence due to § 924(c) stacking to time served plus thirty days).

If he were sentenced today for the same conduct, Smith's mandatory time would be cut in half.  He is exactly the kind of inmate the Commission envisioned when expanding the definition of "extraordinary and compelling reasons" to contain certain nonretroactive changes in law.  A sentence reduction to time-served would reduce the injustice of Smith's sentence and be in line with the many district courts across the country that have granted relief to defendants with excessively long sentences like his.

Fourth, Smith's individualized circumstances support a reduction in sentence.  Smith is now a 43-year-old who has made a "full transformation over the course of his incarceration," who has developed a long, comprehensive record of rehabilitation, and who is prepared to reenter society with a plan and the aid of his family and support network.  *See* Ex. 2, Dr. Rebecca Cartagena, Behavioral Observation (March 19, 2024); Ex. 5, Letter of Support from Dorothy Smith; Ex. 3,

15

Letter from Brent Lawless, The Harris Center; Ex. 11, Letter from LeQuita Burks, Community

Reentry Network; Ex. 12, Letter from Michael Elliott, Goodwill Houston.  While rehabilitation is

not, by itself, an extraordinary and compelling reason, it "may be considered in combination with

other circumstances in determining whether and to what extent a reduction in the defendant's term

of imprisonment is warranted."  *See* U.S.S.G § 1B1.13(d).

> **E.      The Combination of Smith's Unusually Long Sentence, Remarkable
> Rehabilitation, Young Age at the Time of the Offense, and Co-Defendant
> Sentencing Disparities Present An Additional Extraordinary and Compelling
> Reason under the Catch-All Provision In § 1B1.13(b)(5).**

The amended policy statement expressly recognizes that reasons other than those specified

in § 1B1.13(b)(1)–(4) can qualify a defendant for a sentence reduction.  *See* § 1B1.13(b)(5); Ex. 10

at 11 (Amendments to the Sentencing Guidelines).  Here, either independently or in combination

with the above reasons, the Court should consider certain other factors as part of its extraordinary-

and-compelling analysis, such as Smith's age at the time of the offense conduct, his exceptional

rehabilitation, and his support outside of prison.  *See, e.g.*, *United States v. Vaughn*, 62 F.4th 1071,

1073 (7th Cir. 2023) (holding that "a combination of factors may move any given prisoner past" the

threshold for extraordinary and compelling reasons, "even if one factor alone does not").

The Commission's explanatory notes on the Amendments recognize that when a defendant's

offenses "occurred when the defendant was in his late teens or early twenties"—as Smith was—that

fact, when combined with exceptional rehabilitation, can amount to an additional extraordinary and

compelling reasons for a sentence reduction.  Additionally, the Sentencing Commission recently

adopted an important new amendment to the Sentencing Guidelines on April 30, 2024, which will

take effect on November 1, 2024.  The new amendment to U.S.S.G. § 5H1.1 expressly allows a

"downward departure . . . due to the defendant's youthfulness at the time of the offense or prior

offenses," noting that "[c]ertain risk factors may affect a youthful individual's development into the

16

mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships." 2024 Amendments to the Federal Sentencing Guidelines at 13–14.[6]

Smith was 19 years old at the time of the offense, exactly the type of offender the new amendment, and the extensive social science and neuroscience on which it was based, had in mind. Even prior to § 1B1.13 and § 5H1.1, courts had found that a defendant's young age at the time of the offense was an extraordinary and compelling circumstance warranting a sentence reduction. *See, e.g.*, *United States v. Díaz-Castro*, No. 10-333-4, 2022 WL 10986177, at *4–5 (D.P.R. Oct. 19, 2022) (granting sentence reduction under § 3582 partly due to young age (29 years old) at the time of the offense); *United States v. Gregory*, No. 07-CR-73, 2021 WL 5450692, at *4–5 (N.D. Okla. Nov. 22, 2021) (granting a sentence reduction partly because of the defendant's relatively young age (26 years old) at the time of conviction); *United States v. Richardson*, No. 2:06-cr-00010, 2021 WL 5043362, at *4 (W.D.N.C. Oct. 29, 2021) (same).  Moreover, the Supreme Court has held that developmental characteristics of youth make clear that young people are less culpable—their "conduct is not as morally reprehensible as that of an adult," *Roper v. Simmons*, 543 U.S. 551, 570 (2005) (quoting *Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988) (plurality opinion)), and they are "less deserving of the most severe punishments." *Miller v. Alabama*, 567 U.S. 460, 471 (2012) (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2011)).  The Supreme Court also recognizes that being a youth, due to a lack of brain development, leads to a lack of impulse control,[7] vulnerability

---

[6]     *Official Text of the Amendments to the Sentencing Guidelines*, U.S. SENTENCING COMM'N, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202405_Amendments.pdf.

[7]     The part of the brain that regulates behavior—including self-control, thinking ahead, evaluating costs versus rewards of risky behavior, and resisting peer pressure—continues to develop well into one's mid-twenties. *See, e.g.*, Kathryn L. Mills et al., *The Developmental Mismatch in Structural Brain Maturation During Adolescence*, 36 DEVELOPMENTAL NEUROSCIENCE 147, 155–57 (2014); Andrew Michaels, *A Decent Proposal: Exempting Eighteen-to-Twenty-Year-Olds From the Death Penalty*, 40 N.Y.U. REV. L. & SOC. CHANGE 139,

to peer pressure, and failure to consider the long-term consequences of their actions.[8]  See *Roper*, 543 U.S. at 570 (holding it would be morally "misguided to equate the failings of a minor with those of an adult" because minors have a greater possibility for character reform); *Graham*, 560 U.S. at 88 (holding that non-homicidal juvenile life sentences are unconstitutional because juveniles lack maturity and have an underdeveloped sense of responsibility because they are more susceptible to negative influences and outside pressures).

In addition, Section 1B1.13(b)(5) allows this Court to consider other factors, including the sentencing disparity between Smith's sentence and the sentences of his co-defendants, all of whom are already out of prison.  The sentencing disparity between Smith and his co-defendants, Korey Jackson and Derrick Wright, is unwarranted, and courts have held that similar sentencing disparities have constated extraordinary and compelling circumstances.  *United States v. Payne*, No. 94-CR-150, 2022 WL 2257044, at *5 (N.D. Okla. June 23, 2022) (finding that sentencing disparity created an extraordinary and compelling reason where defendant was given a thirty-five-year sentence for robbery and carjacking offenses after being convicted at trial while co-defendants—who entered guilty pleas—received sentences of less than seventeen years) ("Both codefendants were released from prison years ago while [the defendant] remains incarcerated.").[9]

---

163 (2016); Alexander Weigard et al., *Effects of Anonymous Peer Observation on Adolescents' Preference for Immediate Rewards*, 17 Developmental Sci. 71, 72 (2014); Kathryn Monahan et al., *Juvenile Justice Policy and Practice: A Developmental Perspective*, 44 CRIME & JUST. 577, 582 (2015).

[8]  Juveniles are more prone to risk taking behavior, which likely influences criminal behavior, yet they are not mature enough to anticipate future consequences of their actions.  Laurence Steinberg et al., *Age Differences in Future Orientation and Delay Discounting*, 80 Child Dev. 28, 35 (2009).  Despite increased risk taking and decreased self-control, adolescents have a greater potential for reform and rehabilitation, because identity formation occurs much later in youth.  Jeffrey Jensen Arnett, *Identity Development from Adolescence to Emerging Adulthood: What We Know and (Especially) Don't Know*, THE OXFORD HANDBOOK OF IDENTITY DEVELOPMENT 53, 54 (Kate C. McLean & Moin Syed eds., 2015).

[9]  *See also United States v. Brown*, No. 2:95-CR-66(2), 2024 WL 409062, at *8–9 (S.D. Ohio Feb. 2, 2024) (finding extraordinary and compelling when defendant remained incarcerated when co-defendants were released 28 years early, and 74 years early); *United States v. Watson*, No. 04-CR-182, 2022 WL 1125801, at *5 (N.D. Okla. Apr. 15, 2022) (finding it extraordinary and compelling that defendant remained incarcerated

18

Both of Smith's co-defendants were released years ago.  Korey Jackson, like Smith, elected to go to trial.  At his sentencing, Jackson was described by the Government as "the one who really masterminded this entire thing."  *See* Jackson Sent'g Tr. at 27:14-22, ECF 158 (Mar. 22, 2004). Jackson was sentenced to 13 years.  *Id*. at 28:18-23, which was later amended to eight years and eight months.  *See* Jackson Amend. Judgment in a Crim. Case, ECF 185 at 3 (Sept. 17, 2008). Jackson was released in 2009 and has spent the last fifteen years with the ability to rebuild his life beyond the prison walls.

Wright cooperated with the government and was sentenced to only three years.  *See* Jackson Sent'g Tr. at 3:14-16, ECF 158 (Mar. 22, 2004)*.*

Smith has persevered while incarcerated and remained determined for decades to improve himself.  He has demonstrated extraordinary rehabilitation while incarcerated.  Although rehabilitation alone cannot meet the extraordinary-and-compelling threshold, the Commission has left no doubt that it may be considered in combination with other factors, as we ask the Court to do here.  *See* § 1B1.13 (d), Ex. 10, Amendments to the Sentencing Guidelines ("[R]ehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.").  Courts, including those in this circuit, have regularly found that extraordinary and compelling circumstances exist where a defendant has engaged in commendable rehabilitation, has served as "an outstanding role model to other inmates," has a strong support system upon release, and was young at the time of the offenses of conviction.  *See, e.g.*, *United States v. Cooper*, 996 F.3d 283, 289 (5th Cir. 2021) *remanded to* No. H-09-132, 2021 WL 5027498, at *2–4 (S.D. Tex.

---

while co-defendants, who were "no less culpable," pled guilty and received "far more lenient sentences and [had] been released"); *United States v. Eccleston*, 573 F. Supp. 3d. 1013, 1018–19 (D. Md. 2021) (finding extraordinary and compelling circumstances when co-defendants of similar culpability received "vastly lower sentences" than defendant") (188 months as compared to 72 months, later reduced to 70 months and 78 months, later reduced to 70 months).

July 15, 2021) (granting reduction because of the disparity between the mandatory 360 months on

§ 924(c) charges and the 120 months he would have received after the First Step Act); *United States*

*v. Hudec*, No. 4:91-1-1, 2022 WL 2118974, at *4 (S.D. Tex. June 9, 2022) (holding that the

combination of factors including (i) the length of defendant's sentence, (ii) his age at the time of the

offense, (iii) the disparity with respect to the sentence the defendant would receive today, and

(iv) the defendant had not had a disciplinary infraction in a decade all weighed in favor of sentence

reduction); *United States v. Fowler*, 544 F. Supp. 3d 764, 766 (N.D. Tex. 2021) (finding that the fact

that defendant was 25 years of age at the time of his § 924(c) offenses was a factor in favor of

compassionate release); *United States v. Perkins*, No. 3:97-cv-00055, 2023 WL 158910, at *4–5

(N.D. Tex. Jan. 11, 2023) (granting a sentence reduction due to factors including the change in law

for § 924(c) "stacked" charges and the defendant's "solid" release plan to take care of his stepson

and aging mother-in-law and begin working upon his release); *United States v. Hope*, No. 90-cr-

06108, 2020 WL 2477523, at *2–5 (S.D. Fla. April 10, 2020) (granting resentencing for defendant

sentenced to life under old version of § 841 where defendant demonstrated "profound

rehabilitation," was an "outstanding role model to other inmates," and BOP staff noted he was "a

positive influence on his fellow inmates").[10]

---

[10]   *See also United States v. Owens*, 996 F.3d 755, 763–64 (6th Cir. 2021) (compassionate release from 115-year sentence based in large measure on remarkable rehabilitation and serving as mentor to other prisoners); *McCoy*, 981 F.3d at 286 & n.9 (compassionate release from sentence for murder based in part on record of rehabilitation); *United States v. Brown*, 457 F. Supp. 3d 691, 701 (S.D. Iowa 2020) ("The Court does not see BOP Progress Reports like this often."); *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *3 (D. Kan. Mar. 11, 2020) (spotless prison record 30 years into a life sentence part of basis for compassionate release); *United States v. Mitsuyoshi*, No. 11-cr-00380, 2022 WL 819436, at *5 (D. Haw. Mar. 17, 2022); *United States v. Mapp*, 467 F. Supp. 3d 63, 65 (E.D.N.Y., 2020) (compassionate release based in part on rehabilitation and leading rehabilitation programming for other prisoners); *United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020) (spotless disciplinary record 20 years into 205-year sentence and track record of facilitating prison re-entry programs basis for compassionate release); *United States v. Johnson*, No. 05-CR-00167-WHA-5, 2021 WL 5037679, at *2 (N.D. Cal. Oct. 30, 2021) (considering extraordinary rehabilitation over time as basis for compassionate release); *United States v. Baker*, No. 10-20513, 2020 WL 4696594, at *4 (E.D. Mich. Aug. 13, 2020) (same); *United States v. Redd*, 444 F. Supp. 3d 717, 729–30 (E.D. Va. 2020) (compassionate release based in part on spotless disciplinary record and time spent helping fellow prisoners).

On a related note, Smith has maintained a vast system of support with his mother, Dorothy Smith, with whom he plans to live in Houston upon his release; his sisters Dorothy and Shadow, who also live in Houston; a local mental health provider, the Harris Center, which is only a ten-minute drive from his mother's house; and other community re-entry services that can assist him as he reintegrates into his community.  *See* Ex. 5, Letter of Support from Dorothy Smith; Ex. 13, Letter of Support from Sheila Smith; Ex. 14, Letter of Support from Shadow Smith; Ex. 3, Letter from Brent Lawless, The Harris Center; Ex. 11, Letter from LeQuita Burks, Community Reentry Network; Ex. 12, Letter from Michael Elliott, Goodwill Houston.  This, too, may be considered in conjunction with the other above factors.  Smith's case presents an extraordinary and compelling reason warranting a sentence reduction.

Accordingly, as demonstrated by Smith's unusually long sentence, his remarkable rehabilitation, his solid release plan, and his age at the time of his offense, Smith also independently presents a combination of extraordinary and compelling reasons under § 1B1.13(b)(5), authorizing this Court to reduce his sentence to time served.

### F.      The Criteria for Reassessing the Length of Smith's Sentence Weigh Strongly in Favor of a Sentence Reduction to Time Served.

After extraordinary and compelling reasons are established, this Court may reduce Smith's sentence after considering the § 3553(a) factors.  *See* U.S.S.G. § 1B1.13(2); 18 U.S.C. § 3553(a). The § 3553(a) factors the Court should consider include Smith's exemplary rehabilitation; his history and characteristics, including his mental health and drug treatment; the nature and circumstances of the offense, which includes his young age at the time of the offense; sentencing disparities as compared to his two co-defendants and other similar defendants; and other factors that bear on who he is today.  *See* U.S.S.G. § 1B1.13.  Given Smith's rehabilitation, successful mental

health treatment, and his decades-long incarceration, the § 3553(a) factors strongly support reducing his sentence to time served.

Especially given Smith's young age, substance abuse, and mental health issues when he was a teenager, and his significant rehabilitation, under 18 U.S.C. 3553(a), courts must evaluate a defendant's dangerousness based on his *present circumstances*, not just on long ago his past conduct.  *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (stating that post-sentence conduct is a critical part of the history and characteristics of a defendant) (emphasis added).  In looking at Smith's present circumstances, courts must consider the need to avoid unwarranted disparities among defendants who have been found guilty of similar conduct, 18 U.S.C. § 3553(a)(6), and balance all of the § 3553(a) factors against the overarching principle that a sentence must be "sufficient but not greater than necessary" to provide just punishment, deter crime, and promote rehabilitation, 18 U.S.C. § 3553(a); *United States v. Tolliver*, 529 F.Supp.3d 619, 626 (N.D. Tex. 2021).

Here, Smith's characteristics as a rehabilitated adult—including his mentorship, educational accomplishments, medical compliance, and family's support—demonstrate that he is not dangerous, and that the § 3553(a) factors weigh in favor of a time-served sentence.

1.      Smith Does Not Pose a Danger.

Smith is not a danger to anyone.  He has proven he is no longer the illiterate, traumatized teenager who was influenced by his co-defendants to commit a robbery.  Today, Smith is both a mentor and model inmate with the Step Down Program, having earned the trust of BOP staff members.  Ex. 2, Dr. Rebecca Cartagena, Behavioral Observation (March 19, 2024) at 1.  Smith has spent hundreds of hours in treatment and educational programming to teach himself how "to stay out of trouble and to be successful." Ex. 4, Letter from Joseph Smith at 2.  BOP Staff's effusive

recognition of Smith's mentorship highlights Smith's commitment to maintaining his mental health. Ex. 2, Dr. Rebecca Cartagena, Behavioral Observation (March 19, 2024) at 1.  When Smith was being sentenced, he was unaware that he suffered from any mental health issues.  PSR at ¶ 43.  Only after his incarceration was Smith diagnosed with anti-social personality disorder and schizophrenia. Ex. 2, Dr. Rebecca Cartagena, Behavioral Observation (March 19, 2024).  However, both conditions are in remission, due to "his consistent adherence to his medication regimen along with his active participation in the recovery process." *Id.*  Dr. Cartagena noted that Smith has made a "full transformation over the course of his incarceration" and that "he is one of the very few individuals [she] has seen demonstrate such remarkable changes." *Id.*

Smith has also acknowledged that his prior conduct was serious and misguided.  He repeatedly apologized at sentencing for his role in the instant offense.  Smith Sent'g Tr. at 21:1–21:20, ECF 160 (Smith apologized seven times for his role in the offense).  Smith acknowledged that he should receive some incarceration but asked the court to give him enough time to discover the person he wanted to become.  Sent'g Tr., at 22:25–23:4 (asking the judge to "incarcerate me enough time where I can find myself")  Despite his thirty-eight-year sentence, Smith kept his word and has "dedicated [himself] to becoming a well-rounded individual."  Ex. 2, Dr. Rebecca Cartagena, Behavioral Observation (March 19, 2024)at 1.  This Court should consider *this current* version of Smith, a well-rounded individual, when weighing the history and characteristics of Smith under § 3553(a)(1).

    2.    <u>Smith's Twenty-Three-Year Sentence Provides Sufficient Deterrence and Punishment, and Further Incarceration Creates Unwarranted Sentencing Disparities.</u>

Under § 3553(a), the court must consider the need for the sentence that was imposed, the kinds of sentences available, the applicable sentencing range, and any pertinent policy statements

issued by the Commission.  While balancing these factors, a court must also consider the need to avoid sentencing disparities among defendants with similar records who are found guilty of similar conduct.  18 U.S.C. § 3553(a)(6).

At Smith's sentencing, the judge could not properly consider important circumstances including Smith's traumatic childhood, lack of a father figure, and his age at the time of the offense. *United States v. Booker*, 543 U.S. 220, 234 (2005) (stating that prior to *Booker*'s holding judges were required to impose a guideline sentence); Smith Sent'g Tr. at 23:11–23:15, ECF 160 (stating that the court was unable to depart from guidelines for lack of guidance as a youth nor having a disadvantaged upbringing).  Further, § 924(c) charges were subject to a now-changed regime that mandated a 25 year sentence for the second § 924(c) conviction.  *See supra* Section II(B).  These limitations resulted in Smith being given both a significantly longer sentence than he would have received today and a longer sentence than his co-defendants.  *See supra id*.

The twenty-three years Smith has already served have adequately deterred him from any further criminal conduct.  Smith has had a "remarkable adjustment" while incarcerated.  Ex. 1, Affidavit of Stephanie Forrest ¶ 6.  BOP staff acknowledge that Smith is unlikely to re-offend, and have assigned him a "low-risk of recidivism."  *Id.* ¶ 12.

At the time of the robberies, Smith was a teenager suffering from the trauma of his father's sudden death.  PSR ¶ 41; *see also,* Ex. 4, Letter from Joseph Smith at 1 ("My father's death was really hard for me to handle.").  Like every teen, Smith's brain was not fully developed, which caused him to be more motivated by peer pressure and less able to evaluate the consequences of his conduct than an adult.  *See Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988) ("[T]eenager[s] [are] less able to evaluate the consequences of [their] conduct").  And to make matters worse, he was susceptible to pressure from older males.  *United States v. Cooper*, No. H-09-132-1, 2021 WL 5027498, at *4 (S.D. Tex. July 15, 2021) (stating a defendant's traumatic childhood and amount of

24

time already served can contextualize the defendant's prior criminal history).  All of the

circumstances that led Smith to take part in the instant offense are no longer present.  Smith, now

43-years old, has used his incarceration to process the loss of his father and build his self-esteem to

a point that he is no longer susceptible to the suggestions of his peers.  Ex. 1, Affidavit of Stephanie

Forrest ¶ 22 (stating that Smith completed a course designed to "provide a path to behavioral

change, dignity and respect for oneself.").  This significant self-growth shows that Smith has been

adequately deterred from criminal conduct.  Ex. 2, Dr. Rebecca Cartagena, Behavioral Observation

(March 19, 2024) at 1 (stating that Smith "exhibits a high level of integrity" and "shows a high level

of discipline").

Post-*Booker*, courts across the country have looked beyond the Guidelines to individual

circumstances, including the defendant's youth at the time of the offense, exemplary behavior and

rehabilitation in prison, and already substantial years of incarceration.  *See Booker*, 543 U.S. at 234;

*United States v. Rainwater*, 3:94-CR-042-D(1), 2021 WL 1610153, at *3 (N.D. Tex. Apr. 26, 2021)

(quoting *United States v. McCoy*, 981 F.3d at 274 (4th Cir. 2020)) (courts consider "each

defendant's individual circumstances—including their youth at time of the offense…their

exemplary behavior and rehabilitation in prison, and their already-substantial years of

incarceration[.]"); *United States v. Hope*, No. 1:97-CR-105 (3)-MJT, 2023 WL 11109249 at *11

(E.D. Tex. Apr. 10, 2023) (finding that defendant was an immature teenager weighed heavily in

favor of release when combined with significant rehabilitation); *Lang*, 2023 WL 6065156, at *5

(stating completion of vocational programming and lack of recent incident reports show significant

rehabilitation).  Courts have noted that the effects of aging, on its own, limit potential recidivism.

*United States v. Cooper*, 2021 5027498, at *4 (stating that those who are older have a lower risk of

recidivism than those who are younger); *United States v. Lang*, No. 04-11, 2023 WL 6065156 at *5

(E.D. La. Sept. 15, 2023 (stating that as age increases recidivism by any measure declined) (internal citation omitted).

The disparity between what Smith would be sentenced to today and his current sentence is striking.  He is serving a sentence longer than the current nationwide average sentence for murder, despite causing no physical injury with his actions.  U.S. Sent'g Comm'n, Statistical Information Packet Fiscal Year 2022, Fifth Circuit 11, 11 (2023), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2022/5c22.pdf (stating the national average federal sentence for murder is 261 months).  This type of disparity undermines the public's view of the criminal justice system.  *United States v. Spicer*, No. 3:00CR141TSL-FKB-1, 2022 WL 16643098, at *7 (S.D. Miss. Aug. 9, 2022) (maintaining a sentence that far exceeds the sentence for other violent crimes leads the public to view the criminal justice system as treating similarly situated defendants unfairly); *Lang*, 2023 WL 6065156, at *5 (stating significant disparities between a defendant's original sentence and what a similar defendant would be sentenced to at present for similar or worse crimes creates concerns of unwarranted sentence disparities).

Despite having already served twenty-three years, Smith still has almost ten years left to serve.  His sentence is decades longer than what a similar defendant with similar charges would receive today, and remains decades longer than Smith's co-defendants.  *See supra* Section II(B). This unwarranted disparity in sentences contravenes Section 3553(a)(6) and undermines respect for law.  *See Riley*, 2023 WL 8600496, at *8 (stating a sentence that is significantly higher than the petitioner's co-defendants raises concerns of unwarranted sentencing disparities); *Spicer*, 2022 WL 16643098, at *7 (unwarranted sentencing disparities may "lead the public to view the criminal justice system as treating similarly situated defendants unfairly").

26

While some disparity between co-defendants is expected, Smith's sentence—decades longer than his codefendants—raises concerns about unwarranted sentencing disparities. *Riley*, 2023 WL 8600496, at *8 (stating that a 120-month disparity between co-defendants raises concerns about unwarranted sentencing disparities). Indeed, the Government itself described Jackson as the mastermind of the instant offense. Jackson Sent'g Tr. at 27:17 – 27:22, ECF 158; *Id.* at 23:19 – 23:22, ECF 158 ("Smith got the handgun from Jackson"). Yet, despite Jackson's more aggravated role in the planning of this crime, he was given far less time than Smith. *Id.* at 28:18–28:23, ECF 158 (sentencing Jackson to 156 months incarceration).

The Section 3553(a) factors clearly weigh in favor of finding that Smith's continued incarceration serves no legitimate purpose.

        3.      <u>Smith has a Robust Release Plan that Would Allow Him to Thrive Once Back in the Community.</u>

Smith will have a strong support system if he is released. He will be living with his mother in Houston, Texas, and will seek assistance with medication management and therapy at Southeast Community Service Center. Ex. 3, Letter from Brent Lawless, The Harris Center (stating that an individual may present themselves at an outpatient clinic location to access services). The providers at Southeast Community Service Center have four clinic locations and can schedule most patients within a week once they are deemed eligible. *Id.* ("Appointments are available within about a week."). Further, Smith will be able to utilize Goodwill Houston's reentry assistance. Ex. 12, Letter from Michael Elliott, Goodwill Houston ("Those that need our services can attend weekly information session."). Goodwill Houston provides job training classes and specialized services to help those returning to society find employment that works for them. *Id.* at 2 ("All locations specialize in helping the formerly incarcerated and those with disabilities by providing job training and placement services.").

27

Smith's mother and his siblings have offered to help him work toward finding employment and attending medical appointments.  Ex. 5, Letter of Support from Dorothy Smith; Ex. 13, Letter of Support from Sheila Smith; Ex. 14, Letter of Support from Shadow Smith; *see also Spicer*, 2022 WL 16643098 at *7 (holding a defendant with a strong family and community support system will avail himself of help and support rather than re-offend); *Perkins*, 2023 WL 158910, at *4–5 (N.D. Tex. Jan. 11, 2023) (granting a sentence reduction due to factors including the change in law for § 924(c) "stacked" charges and the defendant's "solid" release plan to take care of his stepson and aging mother-in-law and begin working upon his release).

Smith's dedication to self-improvement shows that he has a desire "to stay out of trouble and to be successful."  Ex. 4, Letter from Joseph Smith at 2.  Smith's dedication to rehabilitation makes it clear that he will work to adjust his plan as he moves forward and becomes a model citizen just like he was a model inmate.  *Id.* ("I am prepared to plan again if my plans fail[.]"); Ex. 1, Affidavit of Stephanie Forrest, ¶ 6 ("[T]hose who  took steps to better themselves through voluntary education and practiced prosocial behaviors, as Mr. Smith has, were best prepared for success upon release.").

**Conclusion**

We respectfully request this court use its authority conferred by the First Step Act and the

amended § 1B1.13 to reduce Smith's sentence to time served.

DATED:        New York, New York
              July 25, 2024

                            DEBEVOISE & PLIMPTON LLP

              By:    /s/ *Steven G. Tegrar*

                     Steven G. Tegrar (*pro hac vice*)
                     Ruth M. Ramjit (*pro hac vice*)
                     sgtegrar@debevoise.com
                     rramjit@debevoise.com
                     66 Hudson Boulevard
                     New York, New York 10001
                     Telephone: (212) 909-6000
                     Fax: (212) 909-6836

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2024, I electronically filed the foregoing in the Eastern

District of Texas by using the CM/ECF system.   I certify that all participants in the case are

registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: July 25, 2024                                   */s/  Steven G. Tegrar*
                                                               Steven G. Tegrar (*pro hac vice*)
                                                               *Counsel for Joseph F. Smith*

## <u>CERTIFICATE OF CONFERENCE</u>

In accordance with United States District Court for the Eastern District of Texas Local Rule CR-47(a)(3), the undersigned counsel for Defendant Joseph F. Smith in the above-captioned case ("**Counsel**"), hereby certify that Counsel conferred with Assistant U.S. Attorney Joe Batte on June 10, 2024 and June 12, 2024 and the government is opposed to the relief sought by Defendant.  As such, discussions have concluded at an impasse and Counsel respectfully submits the attached motion to this Court to so resolve.

Dated: July 25, 2024

<u>/s/  Steven G. Tegrar</u>
Steven G. Tegrar (*pro hac vice*)
Ruth M. Ramjit (*pro hac vice*)
sgtegrar@debevoise.com
rramjit@debevoise.com
66 Hudson Boulevard
New York, New York 10001
Telephone: (212) 909-6000
Fax: (212) 909-6836

*Counsel for Joseph F. Smith*

1