UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Crim. No. 1:01-CR-00031-MAC-CLS |
| | § | |
| JOSEPH FRANKLIN SMITH | § | |

**RESPONSE TO DEFENDANT JOSEPH FRANKLIN SMITH'S MOTION
FOR A REDUCTION IN SENTENCE UNDER 18 U.S.C. § 3582(C)(1)(A)**

Defendant Joseph Franklin Smith has filed a motion asking this Court for a time-served sentence under 18 U.S.C. § 3582(c)(1)(A) (doc. 248). The Court should deny the motion for the reasons below.

## BACKGROUND

In January 2001 police in Kirbyville, Texas, responded to a call from Jenny's Fried Chicken that the restaurant had just been robbed by two people. PSR ¶ 7. Police later discovered that Joseph Smith and Derrick Ardoin Wright were the robbers. *Id*. at ¶¶ 7-9. Smith, wearing a blue jacket with a hood pulled down over his face, pointed a gun at a restaurant employee and demanded money. *Id.* at ¶ 9. The employee opened the cash register, and Smith and Wright began to take money from it. *Id*. Smith then demanded that the employee turn over the restaurant's safe. *Id.* When the employee told Smith that the restaurant had no safe, Smith yelled at her and demanded it again. *Id*. This time the employee reached under the counter and handed the robbers the restaurant's cash box. *Id*. They took it and left.

Three restaurant workers followed Smith and Wright outside. *Id*. at ¶ 10. Smith turned around and fired three shots toward them. *Id*. Wright then dove into a pond near the road, while Smith ran the other way and got in a rental car with the

getaway driver, Korey Jackson. *Id.* at ¶¶ 10-11. Later, police got a call from a convenience store in Beaumont that a man fitting Smith's description had just stolen a $27,250 Dodge Durango at gunpoint from a customer who happened to be a car salesman at a local Dodge dealership. *Id.* at ¶12. Wright later told authorities that he wasn't aware that Smith was going to hold up the Jenny's Fried Chicken but that he went along with it because he was afraid Smith would hurt him. *Id.* at ¶ 14. Wright said that the reason he jumped in the pond was because he thought that Smith was shooting at him. *Id.*

A grand jury returned a five-count indictment against Smith, Wright, and Jackson. Smith was charged in all five counts, as follows:

- Count one: conspiracy to commit robbery, 18 U.S.C. § 371 and 18 U.S.C. §§ 1951 and 2;

- Count two: Hobbs Act robbery and aiding and abetting, 18 U.S.C. §§ 1951 and 2;

- Count three: possession of a firearm during and relation to a robbery, 18 U.S.C. §§ 924(c) and 2.

- Count four: carjacking, 18 U.S.C. § 2119; and

- Count five: use of a firearm during and in relation to a carjacking, 18 U.S.C. §§ 924(c) and 2.

PSR ¶ 1. Counts four and five were severed from the rest, and Smith went to trial on counts one through three before Judge Schell. *Id.* at ¶ 4. The jury found him guilty on all three counts. Smith later pleaded guilty to and entered into a written plea agreement with the government on the § 924(c) charge in count five. *Id.* at ¶¶ 4-5.

Judge Schell sentenced Smith to 461 months' imprisonment. The prison sentence broke down as follows:

- 41 months on counts one (conspiracy to commit robbery, 18 U.S.C. §§ 1951, 371) and two (Hobbs Act robbery, 18 U.S.C. §§ 1951, 2);

- 120 months on count three (use of a firearm to commit robbery, 18 U.S.C. § 924(c)(1)), to run consecutively to counts one, two, and five;

- 300 months on count five (use of a firearm to commit carjacking, 18 U.S.C. § 924(c)(1)), to run consecutively to counts one, two, and three.

Judgment (doc. 128).

### LEGAL BACKGROUND CONCERNING COMPASSIONATE RELEASE

The Sentencing Reform Act of 1984, Pub. L. No. 98-473, Tit. II, Ch. II, 98 Stat. 1987 (18 U.S.C. § 3551 *et seq.*), "overhaul[ed] federal sentencing practices." *Tapia v. United States*, 564 U.S. 319, 325 (2011). To make prison terms more determinate, Congress established the Sentencing Commission as an independent agency in the Judicial Branch and "authorized it to promulgate Sentencing Guidelines and to issue policy statements." *Dillon v. United States*, 560 U.S. 817, 820 (2010); *see* 28 U.S.C. §§ 991, 994(a). "The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system," and Congress directed the Commission to "eliminate unwarranted disparities in punishment of similar defendants who commit similar crimes." *Neal v. United States*, 516 U.S. 284, 290-91 (1996).

Congress also abolished the practice of federal parole, specifying that a "court may not modify a term of imprisonment once it has been imposed" except in certain enumerated circumstances. 18 U.S.C. § 3582(c); *see Tapia*, 564 U.S. at 325. One of those circumstances, set forth in 18 U.S.C. § 3582(c)(1)(A) (and commonly referred to as "compassionate release"), authorizes a court to "reduce [a] term of imprisonment . . . , after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds," as relevant here, that "extraordinary

and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." As originally enacted, § 3582(c)(1)(A) authorized such reductions only "upon motion of the Director of the Bureau of Prisons" (BOP).[1]  Sentencing Reform Act § 212(a)(2), 98 Stat. 1998.

Congress directed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [§] 3582(c)." 28 U.S.C. § 994(a)(2)(C). Congress instructed the Commission, in promulgating policy statements regarding § 3582(c)(1)(A), to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

In 2006, the Commission promulgated Sentencing Guidelines § 1B1.13, p.s. As amended in 2016, the policy statement described four categories of reasons that should be considered extraordinary and compelling: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other

---

[1] Under the system of federal parole, 18 U.S.C. § 4205(g) provided the Bureau of Prisons with authority to move "[a]t any time" for the sentencing court to "reduce any minimum term [of imprisonment] to the time the defendant has served." 18 U.S.C. § 4205(g) (repealed). BOP regulations explained that the Bureau generally used that authority "only in particularly meritorious or unusual circumstances which could not reasonably have been foreseen by the court at the time of sentencing," including where "there is an extraordinary change in an inmate's personal or family situation or if an inmate becomes severely ill." 45 Fed. Reg. 23,364, 23,366 (Apr. 4, 1980). As the Senate Report accompanying the Sentencing Reform Act explains, § 3582(c)(1)(A) was intended to be "similar to the authority" afforded to the BOP under 18 U.S.C. § 4205(g). S. Rep. No. 98-225, at 121 n.298 (1983).

Reasons" "determined by the Director of the Bureau of Prisons" to be "extraordinary and compelling" "other than, or in combination with," the reasons described in the other three categories. Sentencing Guidelines App. C Supp., Amend. 799 (Nov. 1, 2016).

In the First Step Act of 2018, Congress amended § 3582(c)(1)(A) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. *See* Pub. L. No. 115-391, Tit. VI, § 603(b), 132 Stat. 5194, 5239. Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members, and remained without a quorum for more than three years. *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). The Commission thus did not immediately amend the policy statement to account for the First Step Act's procedural change. In the intervening years, the Fifth Circuit and nearly all others held that the existing policy statement's description of what should be considered "extraordinary and compelling" reasons for a sentence reduction was not applicable to defendant-filed motions. *See United States v. Shkambi*, 993 F.3d 388, 392-93 (5th Cir. 2021); *United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (collecting cases from other circuits); *but see United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021).

In 2022, the Sentencing Commission regained a quorum, and after public notice and comment voted on April 5, 2023 to promulgate amendments to the *Guidelines Manual*, including to § 1B1.13's policy statement. 88 Fed. Reg. 28,254, 28,254-28,281 (May 3, 2023). The amendments to § 1B1.13 render the policy statement applicable to defendant-filed motions. As relevant here, the amendments also purport to allow, with certain limitations, consideration of changes in law— including ones Congress has chosen not to make retroactive—when determining

whether a defendant has presented an extraordinary and compelling reason for a sentence reduction. That change is reflected in new subsections (b)(6) and (c), which provide:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

> (c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; *see* U.S.S.G. § 1B1.13(b)(6), (c).

The Commission divided 4-3 on whether to promulgate the amendments to § 1B1.13 (with Chair Reeves, Vice Chairs Mate and Restrepo, and Commissioner Gleeson voting in favor and Vice Chair Murray and Commissioners Boom and Wong voting against). *See* USSC Public Meeting Minutes (April 5, 2023), at pp. 26-27, *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_minutes.pdf. The dissenting Commissioners explained that, in their view, the policy statement "goes

further than the Commission's legal authority extends," and the Commission had made "a seismic structural change to our criminal justice system without congressional authorization or directive." USSC Public Meeting Tr. (April 5, 2023), at 60 (Commissioner Wong, delivering joint statement), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf. In particular, the Commission's decision to allow nonretroactive changes in law to establish a basis for a sentence reduction "supplants Congress's legislative role" and would authorize courts "to revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that Congress did not wish to make retroactive." *Id.* at 60-61. "The separation of powers problem" with that result, the dissenting Commissioners explained, "should be apparent," as "[i]t is not the Commission's role to countermand Congress's legislative judgments." *Id.* at 61.

The Commission submitted its proposed Guidelines amendments to Congress on April 27, 2023. Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023. 88 Fed. Reg. at 28,254; *see* 28 U.S.C. § 994(p).

**ARGUMENT**

**I.    The Court may wish to withhold any decision on Smith's motion for compassionate release until potentially dispositive legal questions, now pending before the Fifth Circuit, are decided.**

In his motion for compassionate release, Smith argues that the Sentencing Commission's recent amendment to the Sentencing Guidelines found in U.S.S.G. § 1B1.13(b)(6) warrants a sentence reduction because the changes to Section 924(c) brought by the First Step Act of 2018, explicitly made non-retroactive by Congress,

constitute an "extraordinary and compelling" reason within the meaning of Section 3582(c)(1)(A). Motion (doc. 248) 10-13. As explained below, the government believes that the Sentencing Commission exceeded its statutory authority in promulgating U.S.S.G. § 1B1.13(b)(6), which purports to authorize district courts to consider "a change in the law" when determining whether a defendant has established extraordinary and compelling reasons for a sentence reduction. A district court in the Northern District of Texas held likewise in *United States v. Gipson*, 2024 WL 1048139 (N.D. Tex. March 8, 2024) (O'Connor, J.). Gipson appealed, and the appeal is currently pending before the Fifth Circuit. *See United States v. Gipson*, No. 24-10260.

Gipson itself is related to another appeal currently pending before the Fifth Circuit that Smith relies upon — *United States v. Jean*, No. 23-40463. On July 15, 2024, a divided panel of the Fifth Circuit in *Jean* concluded that changes in law can qualify as extraordinary and compelling reasons under Section 3582(c)(1)(A) and suggested that the new U.S.S.G. § 1B1.13(b)(6) is a valid exercise of the Sentencing Commission's authority. *United States v. Jean*, 108 F.4th 275, 281-82, 288-90 (5th Cir. 2024) (Douglas, J.). This came over a vigorous dissent in which Judge Smith said that "[t]he kindest thing I can say about the majority's zealous opinion is that it is a horrifying violation of this court's well-respected rule of orderliness." *Id*. at 291 (Smith, J., dissenting). He explained that the Fifth Circuit's earlier-in-time decision in *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023), "directly construed the phrase 'extraordinary and compelling' as used in § 3582(c)(1)(a)(i)", which "unambiguously excluded non-retroactive changes in law." *Jean*, 108 F.4th at 297 (Smith, J., dissenting). What's more, Judge Smith concluded that "the [Sentencing]

Commission's amended policy statement [U.S.S.G. § 1B1.13(b)(6)] violates § 3582(c)(1)(A)(i)'s text as construed by our circuit and therefore is neither binding nor persuasive." *Id*. at 296-97.

Evidently at least one judge on the Fifth Circuit has qualms about the panel majority's decision in *Jean*, as the day after the decision was issued the Court *sua sponte* stayed issuance of the mandate. *See* Order, *United States v. Jean*, No. 23-40463 (5th Cir. July 16, 2024). And the government has since, on September 18, 2024, filed a petition for rehearing en banc in *Jean*, which remains pending.

All this is to say that there's much uncertainty surrounding the legal validity of the Sentencing Commission's recent amendment in U.S.S.G. § 1B1.13(b)(6), upon which Smith's compassionate-release motion depends. It would seem that the most prudent course for this Court in deciding Smith's motion would be to withhold decision until the Fifth Circuit finally decides *Jean* and *Gipson*.

## II.    The Sentencing Commission exceeded its Congressionally delegated authority in promulgating U.S.S.G. § 1B1.13(b)(6).

In § 3582(c)(1)(A)(i), Congress enacted a narrow exception to the general rule that a federal court "may not modify a term of imprisonment once it has been imposed," permitting a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant a reduction. Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons," 28 U.S.C. § 994(t), but the Commission's authority necessarily is limited by Congress's clear directive that any such reasons be both *extraordinary* and *compelling*. Nonretroactive changes in sentencing law are neither. To the contrary, "in federal sentencing the ordinary practice is to apply new

penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012).

To support his motion for a sentence reduction, Smith invokes subsection (b)(6) of the policy statement, in which the Sentencing Commission purported to interpret § 3582(c)(1)(A)(i) to permit changes in law to establish "extraordinary and compelling" reasons for a sentence reduction in some circumstances. Although Congress delegated broad authority to the Sentencing Commission, subsection (b)(6) is contrary to the statute's text, structure, and purpose, and therefore is invalid.

### A.    In exercising its authority, the Sentencing Commission cannot act contrary to statute.

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Such a delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); *see Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—*i.e.*, a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

The Sentencing Commission in particular "was not granted unbounded discretion," and as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of

Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (reasoning that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide that discretion). In the Sentencing Reform Act itself, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). And Congress authorized the Commission only to "make *recommendations to Congress* concerning modification or enactment of statutes relating to sentencing." *Id.* § 995(a)(20) (emphasis added).

> ## B.   Subsection (b)(6) conflicts with Section 3582(c)(1)(A)'s plain text, context, and purpose.

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase's text, particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The Commission's interpretation of the statute as set forth in subsection (b)(6) is unreasonable and therefore invalid. *Mayo Found.*, 562 U.S. at 58; *see LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

Moreover, the Fifth Circuit has construed § 3582(c)(1)(A) in ways that preclude a change in law from qualifying as an extraordinary and compelling reason for a sentence reduction. The court did so, moreover, based on its construction of the statute's clear meaning. The Sentencing Commission's policy statement provides no basis to reconsider that determination.

First, in *United States v. Escajeda*, 58 F.4th 184 (5th Cir. 2023), the Fifth Circuit directly interpreted the statutory phrase "extraordinary and compelling" reasons. *Id*. at 186. The Court explained that it "underst[oo]d 'extraordinary' to mean 'beyond or out of the common order,' 'remarkable,' and synonymous with 'singular.'" *Id*. (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 903 (2d ed. 1934; 1950 ) and citing *Jenkins*, 50 F.4th at 1197 (Katsas, J.) (defining "extraordinary" as "most unusual," "far from common," and "having little or no precedent") (quotation omitted)). The Fifth Circuit further pointed out that "'[c]ompelling'" is a participle of 'compel,' which means 'to drive or urge with force, or irresistibly,' 'to force,' and 'to subjugate.'" *Id*. (quoting WEBSTER'S SECOND at 544). "These terms explain why prisoners can seek relief under § 3582(c)(1) *only* when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id*. (emphasis added) (citing *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (discussing terminal illness). Indeed, that's why § 3582(c)(1)(A)'s referred to as "compassionate release" — "because courts generally use it for prisoners with severe medical exigencies or infirmities." *Id*.

The Fifth Circuit later, in *McMaryion*, applied *Escajeda*'s interpretation of the statutory phrase "extraordinary and compelling reasons" in rejecting an inmate's

argument "that he should get a sentencing reduction because the First Step Act reduced the statutory minimums applicable to his offenses." *McMaryion*, 2023 WL 4118015, at \*2. Pointing out that "Congress did not make those reductions retroactive", the Court held that "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling." *Id*. (citing *Jenkins*, 50 F.4th at 1198-1200 and *McCall*, 56 F.4th at 1065-66). "Rather, 'in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced.'" *Id*. (quoting *Dorsey*, 567 U.S. at 280 (emphasis added)). The panel explained that "[t]his ordinary practice reflects a 'presumption against retroactive legislation' that is 'deeply rooted in our jurisprudence' and that 'embodies a legal doctrine centuries older than our Republic.'" *Id*. (quoting *Landgraf v. USI Film Prods*., 511 U.S. 244, 265 (1994)).

As mentioned above, after *Escajeda* and *McMaryion*, a panel majority of the Fifth Circuit, in *Jean*, held that district courts may "consider non-retroactive changes in sentencing law when determining whether extraordinary and compelling reasons exist for compassionate release." *Jean*, 108 F.4th at 282. *Jean*'s holding, however, conflicts with *Escajeda*'s earlier-in-time construction of § 3582(c)(1)(A)'s text. The government has filed a petition for rehearing en banc in *Jean*, which remains pending.

"[T]he [Sentencing] Commission does not have the authority to amend the statute" or "to override the statute as [the court of appeals] has construed it." *Neal*, 516 U.S. at 290, 294; *see United States v. Koons*, 850 F.3d 973, 979 (8th Cir. 2017) (Sentencing Commission cannot "overrule circuit precedent interpreting a *statutory*

provision" (quoting *United States v. Williams*, 808 F.3d 253, 266 (4th Cir. 2015) (Traxler, C.J., dissenting))). The Fifth Circuit's determination of the statutory phrase "extraordinary and compelling" in *Escajeda* remains binding and is correct. Nor does (or could) the Commission's policy statement provide a basis to reconsider that precedent, because "a precedent holding a statute to be unambiguous forecloses a contrary agency construction." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005); *see Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536-37 (1992) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of *stare decisis*, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning." (internal quotation marks omitted)).

The Supreme Court has not hesitated to reject the Sentencing Commission's purported interpretation of a statute where inconsistent with plain statutory language—including language the Court had previously authoritatively construed. In *Neal*, for example, the Court held that Guidelines commentary addressing the method for calculating the weight of LSD did not alter the Court's interpretation of the phrase "a mixture or substance containing a detectable amount" of certain drugs as used in 21 U.S.C. § 841(b). *Neal*, 516 U.S. at 287-89 (describing Court's prior decision in *Chapman v. United States*, 500 U.S. 453 (1991)). Although the Court considered it "doubtful" the Commission intended to "displace" the Court's interpretation of § 841(b), the Court nevertheless explained that if the commentary was intended to do so, the Commission's action "cannot be squared" with the Court's prior determination. *Id.* at 293-94. "Once we have determined a statute's meaning," the Court explained, "we adhere to our ruling under the doctrine of *stare*

*decisis*, and we assess an agency's later interpretation of the statute against that settled law." *Id.* at 295; *see also LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

The same result is warranted here. The Fifth Circuit directly construed, as a statutory matter, the phrase "extraordinary and compelling" as used in § 3582(c)(1)(A). *Escajeda*, 58 F.4th at 186; *but see Jean*, 108 F.4th at 282. The Sentencing Commission "does not have the authority" to "override" that authoritative construction of the statute's clear meaning. *Neal*, 516 U.S. at 290, 294.

Here, Smith invokes Congress's decision not to extend the First Step Act's amendment to § 924(c) to defendants like him as a change in law warranting a sentence reduction. In the First Step Act, Congress amended § 924(c) to provide that the 25-year consecutive term or a successive § 924(c) offense does not apply unless the defendant had a previous, final § 924(c) conviction at the time of the offense. In § 403(b) of the Act, however, Congress made the deliberate choice not to make that amendment applicable to defendants who had been sentenced before the Act's enactment, specifying that the change would apply only "if a sentence for the offense has not been imposed as of such date of enactment." § 403(b), 132 Stat. 5222. In so doing, Congress adhered to "the ordinary practice" in "federal sentencing" of "apply[ing] new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey*, 567 U.S. at 280; *cf.* 1 U.S.C. § 109 (general nonretroactivity provision).

Given Congress's deliberate choice not to make the First Step Act's change to § 924(c) applicable to defendants who had already been sentenced, "there is

nothing 'extraordinary' about" the fact that Defendant's sentence reflects the statutory penalty that existed at the time he was sentenced. *Thacker*, 4 F.4th at 574. That sentence "was not only permissible but statutorily required at the time." *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring). And when Congress enacted the First Step Act, it specifically declined to disturb Smith's sentence for his § 924(c) convictions, even as it made other (previous) statutory changes applicable to defendants previously sentenced. In § 404 of the same Act, for example, Congress expressly enacted a mechanism allowing defendants convicted under certain drug statutes (those for which penalties had been modified by certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372) to seek retroactive application of those statutory changes in their cases. Section 404 authorizes a sentencing court to "impose a reduced sentence as if [those provisions] of the Fair Sentencing Act" had been in effect at the time of the defendant's offense. § 404(b), 132 Stat. 5222. But Congress simultaneously declined to disturb § 924(c) sentences that had already been imposed notwithstanding the different penalties that § 403 would require courts to apply at future sentencings.

A nonretroactive change to a statutory provision likewise cannot constitute a "compelling" reason for a sentence reduction. When Congress enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." *McCall*, 56 F.4th at 1055 (quoting *Webster's* 463). Thus, for a reason to be "compelling" under § 3582(c)(1)(A)(i), it must provide a "forcing, impelling, [or] driving" reason to disturb the finality of a federal sentence. *Id.* (internal quotation marks omitted). Even beyond the First Step Act's explicit

determination not to apply the amendment to § 924(c) retroactively, ordinary principles of nonretroactivity already consider, and reject, the notion that changes in statutory law generally should be applied retrospectively. Congress enacts new sentencing statutes against a background principle, codified in 1 U.S.C. § 109, that a criminal statute does not change the penalties "incurred" under an older criminal statute "unless the repealing Act . . . so expressly provide[s]." The "strong presumption against statutory retroactivity" "is 'deeply rooted in our jurisprudence' and 'embodies a legal doctrine older than our Republic.'" *Jenkins*, 50 F.4th at 1198 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). To treat a nonretroactive change in the law as a "compelling" reason to disturb a final sentence would thus undo the balance already struck by ordinary nonretroactivity principles. Nothing about a nonretroactive change in the law forces, impels, or drives such a nonsensical outcome.

Any disparity between Smith's sentence and the sentence he would receive today is the product of deliberate congressional design—namely, Congress's decision not to make the First Step Act's change to § 924(c) applicable to defendants who had already been sentenced. As the Supreme Court has recognized, such "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." *Dorsey*, 567 U.S. at 280. And treating Congress's express adherence to "ordinary practice" in federal sentencing, *id.*, "as simultaneously creating an extraordinary and compelling reason for early release" would contravene various canons of construction, *Andrews*, 12 F.4th at 261.

Accordingly, a nonretroactive change in the law cannot serve as either an "extraordinary" or a "compelling" reason for a sentence reduction in isolation or as adding to a package of such "reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Whether considered alone or in combination with other asserted factors, the possibility that a previously sentenced defendant might receive a lower sentence if he were sentenced today is a "legally impermissible" consideration for purposes of determining whether an extraordinary and compelling reason exists. *Jenkins*, 50 F.4th at 1202 (internal quotation marks omitted); *see United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

## III.    Smith is not entitled to relief under U.S.S.G. § 1B1.13(b)(5).

Smith alternatively contends that the Court may consider his claimed reasons for a sentence reduction under subsection (b)(5), which permits a court to find as extraordinary and compelling reasons "any other circumstance or combination of circumstances that . . . are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Subsection (b)(5) does not encompass changes in law, because it specifically references only reasons "similar" to those identified in subsections (1) through (4) — intentionally excluding subsection (6). *Id*. And subsection (c) expressly excludes consideration of changes in law except as provided for in subsection (b)(6). U.S.S.G. § 1B1.13(c).

This leaves the other grounds raised by Smith under subsection (b)(5): "the combination" of his "remarkable rehabilitation"; his "unusually long" sentence; his "young age" at the time of the offense; and alleged "co-defendant sentencing

disparities". Motion at 16. But all of these reasons, save "rehabilitation" (which we will address later), run headlong into how the Fifth Circuit has authoritatively construed the statutory phrase "extraordinary and compelling reasons." As explained above, the Fifth Circuit has construed the statutory terms "extraordinary and compelling" to mean that "prisoners can seek relief under [§] 3582(c)(1) *only* when they face some extraordinarily severe exigency, *not foreseeable at the time of sentencing*, and unique to the life of the prisoner." *Escajeda*, 58 F.4th at 186 (emphasis added).

First, Smith's request for relief under subsection (b)(5) based on his "unusually long" sentence fails. That Smith would serve a long sentence is a circumstance that was not only foreseeable but known at the time of sentencing, given that the Court imposed a 461-month sentence. And the Fifth Circuit said in *Escajeda* "that a prisoner cannot use § 3582(c) to challenge the legality *or the duration* of his sentence[.]" *Escajeda*, 58 F.4th at 187 (emphasis added). Nor is the length of time Smith has served or will serve in prison a circumstance that's "similar in gravity" to those described in paragraphs (1) through (4) of § 1B1.13(b) — that the defendant faces some severe medical circumstance, is of advanced age, has some severe family circumstances, or was the victim of abuse in prison. And as discussed above, the length of a sentence is a factor covered by subsection (b)(6).

Second, Smith points to his relative youth at the time of the offense. But that too is a fact that obviously existed at sentencing. *See United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021) (finding that the district court erred in finding that facts that existed at sentencing — including the defendant's relative youth — were extraordinary and compelling reasons); *United States v. Cook*, 2023 WL 4565461,

*3 (E.D. Mich. July 17, 2023) ("But Cook's youth at the time of his offense was a fact that existed at the time of sentencing").

Nor can Smith's relative youth at the time of the offense (19 years old) be considered "similar in gravity" to the circumstances described in subsections (b)(1)-(4). The closest is subsection (b)(2), which addresses the "Age of the Defendant." But it applies only when the defendant is at least 65 years old *and* "is experiencing a serious deterioration in physical or mental health because of the aging process" *and* "has served at least 10 years" of his sentence. U.S.S.G. § 1B1.13(b)(2). Those are exactly the sort of changed circumstances that Congress envisioned that might warrant a sentence reduction under the compassionate-release statute — *e.g.*, where an inmate becomes elderly or infirm during an extremely long period of incarceration. These represent a severe exigency that's "unique to the life of the prisoner" and not foreseeable at sentencing. *Escajeda*, 58 F.4th at 186. Smith's youth at sentencing is the opposite — it was known and foreseeable. *See, e.g.*, *United States v. Wrice*, 2021 WL 7209619, at *1 (7th Cir. Dec. 20, 2021) ("[F]acts known at the original sentencing cannot justify a later reduction."); *United States v. Rimpson*, 2021 WL 6098440, at *1 (7th Cir. Sept. 22, 2021) ("The district judge knew their ages when it imposed the sentences initially, and so that fact provides no reason—let alone an extraordinary and compelling one—to reduce those sentences now.").

Next, Smith complains about the sentencing disparity between the prison sentence he received (461 months) as against those his co-conspirators (Jackson — 156 months; and Wright — 36 months) received. Motion at 18. But as other courts have recognized, "[i]t is not 'extraordinary' (indeed, it should be expected) that a

defendant who proceeds to trial and is convicted receives a longer sentence than his co-defendants who plead guilty to different crimes, accept responsibility, and assist the government by cooperating." *United States v. Fernandez*, 104 F.4th 420, 428-29 (2d Cir. 2024); *see also Missouri v. Frye*, 566 U.S. 134, 143-44 (explaining that our "system of pleas . . . often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial"). And "lower sentences for cooperating defendants are explicitly contemplated by the sentencing statute, see 18 U.S.C. § 3553(e), and the Sentencing Guidelines, see U.S.S.G. § 5K1.1." *Fernandez*, 104 F.4th at 428-29.

What's more, Smith was the one who pointed the gun at the restaurant employee and demanded money. PSR ¶ 9. And he was the one who fired shots toward the restaurant employees who followed the robbers outside. *Id*. at ¶ 10. Smith's degree of culpability, then, in addition to his decision to go to trial, contributed to the sentencing disparity. *See United States v. Ebbers*, 458 F.3d 110, 129 (2d Cir. 2006) (recognizing that "a reasonable explanation" for a sentencing disparity was "readily apparent" where there were "varying degrees of culpability and cooperation between the various defendants"). And anyway, these are all considerations that the sentencing judge (Schell, J.) took into consideration when imposing sentence; they are nowise extraordinary and compelling reasons within the meaning of the compassionate-release statute.

This leaves only the category of Smith's alleged rehabilitation in prison. Smith's description of his accomplishments, self-improvement, and service in prison, Motion (doc. 248) 5-8, no doubt signify an inmate who has commendably

made good use of his time in prison.[2] But Congress has dictated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Because Smith has failed to put forward any legally cognizable extraordinary and compelling reason for a sentence reduction, and because his rehabilitation alone cannot support a reduction, the Court should deny his motion.

## CONCLUSION

The Court should deny Smith's motion for compassionate release.

Respectfully submitted,

Damien M. Diggs
United States Attorney
Eastern District of Texas

/s/ *Bradley Visosky*
Bradley Visosky
Assistant U.S. Attorney
Texas Bar No. 24034727
101 E. Park Blvd., Suite 500
Plano, Texas 75074
(972) 509-1201
(972) 509-1209 (fax)
bradley.visosky@usdoj.gov

Attorneys for the United States

---

[2] The Court directed the government to "provide any relevant Bureau of Prison records" and "to file relevant medical records, if any, under seal." Order (doc. 251). Because Smith does not advance a medical reason for compassionate release, the government does not believe that any medical records are relevant. The government has, however, attached for the Court's consideration Smith's BOP disciplinary records. *See* Exhibit A.

## **Certificate of Service**

I certify that on October 10, 2024, a copy of this response will be sent to counsel for Smith through use of the Court's CM/ECF system.

/s/ *Bradley Visosky*
Bradley Visosky